# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-970


IN RE:  MEDICAL REVIEW PANEL CLAIM OF
DON CLAYTON WRIGHT, ET UX.

**VERSUS**

**CHRISTUS HEALTH CENTER LOUISIANA, ET AL.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 248,353
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*


**MARC T. AMY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of Jimmie C. Peters, Marc T. Amy, and Shannon J. Gremillion, Judges.


**AFFIRMED.**


**James R. Shelton**
**Durio, McGoffin, Stagg & Ackermann**
**Post Office Box 51308**
**Lafayette, LA   70505-1308**
**(337) 233-0300**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Gary Jones, M.D.**
     **Craig Manzer, N.P.**

**Randall E. Hart**
**1301 Common Street**
**Lake Charles, LA   70601**
**(337) 439-2450**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
     **Don Clayton Wright**
     **Patricia C. Wright**

**AMY, Judge.**

The plaintiff and his wife filed an initial medical malpractice claim against a number of health care providers alleging various negligent acts resulting in a stroke that caused partial paralysis. Thereafter, the plaintiffs filed a supplemental and amending complaint, adding additional health care providers as defendants and expanding the alleged period of negligence. Two of the additional defendants filed an exception of prescription, noting that the dates of the purported negligence occurred more than one year prior to the filing of the claim. The trial court granted the exception of prescription. The plaintiffs appeal. For the following reasons, we affirm.

### Factual and Procedural Background

The record indicates that, on November 24, 2010, Don Wright began a period of hospitalization due to endocarditis. Although Mr. Wright was released from the hospital on December 6, 2010, he continued to suffer difficulties and, on December 15, 2010, reported to the emergency room of Christus St. Francis Cabrini Hospital with stroke symptoms. Mr. Wright alleges that, by December 16, 2010, his condition continued to deteriorate and resulted in a seizure and the discovery of a major left-side bleed, allegedly due to the negligent use of Heparin. Mr. Wright was ultimately discharged into the care of a nursing facility due to what he refers to as a catastrophic and permanent brain injury caused by the series of events. Notably, Mr. Wright is paralyzed on his left side and is unable to verbally communicate.

By letter dated December 15, 2011, Mr. Wright and his wife filed a request for the formation of a Medical Review Panel with the Commissioner of Administration, for consideration of the allegations of medical malpractice against

a number of health care providers. Subsequently, by letter dated July 26, 2013, the plaintiffs filed a First Supplemental and Amending Complaint Letter, which they stated was intended "to completely replace the previously filed complaint." By that letter, the plaintiffs generally asserted that Mr. Wright "suffered a massive stroke and hemiplegia, resulting in severe impairment." Although they were not among the defendants listed in the initial complaint letter, the plaintiffs added Nurse Practitioner Craig Manzer and Dr. Gary P. Jones as defendants in the amended complaint. With regard to these two defendants, the plaintiffs alleged that:

> On *November 30, 2010*, Craig Manzer, N.P. saw Mr. Wright on behalf of Dr. Robert DeWitt – the cardiothoracic surgeon to whom Mr. Wright had been referred. Craig Manzer, N.P., supervised by Dr. Robert DeWitt and/or Gary P. Jones, failed to 1) discuss treatment options with Mr. Wright, including immediate surgery to address the large mitral valve vegetations and/or 2) immediately refer Mr. Wright to a qualified cardiothoracic surgeon capable of providing [sic] with information concerning IE and the treatment options available, including immediate surgery and the risks of delayed treatment, including septic emboli.

> Dr. Gary P. Jones saw Mr. Wright on *December 4, 2010*. Dr. Jones failed to discuss treatment options with Mr. Wright, including immediate surgery to address the large mitral valve vegetations and the risks of delayed treatment, including septic emboli.

(Emphasis added.)

In September 2013, two other defendants in the matter filed a "Petition to Allot Docket Number Under LA. R.S. 40:1299.47" so that exceptions or defenses could be resolved by the trial court without completion of the review process. *See* La.R.S. 40:1299.47(B)(2)(a) [1]; La.R.S. 40:1299.47(C)(6). [2] The trial court

---

[1] In pertinent part, La.R.S. 40:1299.47(B)(2)(a) provides that:

> A health care provider, against whom a claim has been filed under the provisions of this Part, may raise . . . any exception or defenses available pursuant

2

thereafter assigned a docket number for the purpose of filing motions and/or exceptions in the Medical Review Panel Proceeding.

As pertinent to the matter now before the court, Mr. Manzer and Dr. Jones filed an exception of prescription, asserting that the allegations contained in the Medical Review Panel complaint had prescribed against them. The defendants pointed out that the complaint alleged November 30, 2010 and December 4, 2010 acts by them, respectively. Yet, the initial complaint was filed on December 15, 2011 (in which they were not named as defendants), and the supplemental and amending complaint was not filed until July 26, 2013. In opposition, the plaintiffs argued that, although the initial claim was not filed until more than one year after the dates of negligence of these two defendants, the plaintiffs did not discover the purported negligence until December 15, 2010, when Mr. Wright suffered the massive stroke and that since December 15, 2011, the claim was maintained against a number of defendants. The plaintiffs also asserted that their cause of action did not, in fact, even arise until December 15, 2010 since damages were not sustained until the time of the stroke. Further, the plaintiffs suggested that, although Mr. Manzer and Dr. Jones were not added as defendants until the July 2013 supplemental claim, the initial filing suspended the running of prescription pursuant to La.R.S. 40:1299(A)(2)(a), insofar as they are allegedly joint tortfeasors with the various defendants originally named.

_____

to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel.

[2] La.R.S. 40:1299.47(C)(6) provides that: "The party aggrieved by the alleged failure or refusal of another to perform according to the provisions of this Section may petition any district court of proper venue over the parties for an order directing that the parties comply with the medical review panel provisions of the medical malpractice act."

Following a hearing, the trial court found merit in the exception of prescription and dismissed the plaintiffs' claim against defendants Manzer and Jones. In particular, the trial court determined that, to the extent the plaintiffs alleged negligent acts on November 30, 2010 and December 4, 2010, the plaintiffs' claim had already prescribed by the time of the filing of the December 15, 2011 claim form. Citing *Masters v. Field*, 27,974 (La.App. 2 Cir. 1/24/96), 666 So.2d 1333, the trial court concluded that the allegation of joint and solidary status could not suspend the previously prescribed claim against the defendants. The trial court subsequently denied the plaintiffs' motion for reconsideration and new trial.

The plaintiffs appeal, asserting that the trial court erred in: 1) finding that the plaintiffs' cause of action arose on November 30, 2010 and December 4, 2010 respectively; 2) finding that the cause of action arose before the plaintiffs suffered any damages; and 3) finding that the plaintiffs' request for a medical review panel did not interrupt prescription as to the two additional defendants.

**Discussion**

Louisiana Revised Statutes 9:5628(A) sets forth the prescriptive periods applicable to medical malpractice actions as follows:

> No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

Furthermore, as is pertinent in this case, La.R.S. 40:1299.47(A)(2)(a) provides that:

> *The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel*, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. *The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.* Filing a request for review of a malpractice claim as required by this Section with any agency or entity other than the division of administration shall not suspend or interrupt the running of prescription. All requests for review of a malpractice claim identifying additional health care providers shall also be filed with the division of administration.

(Emphasis added.)

The supreme court has instructed that medical malpractice actions are governed by the specific provisions of the Medical Malpractice Act regarding prescription and the suspension of prescription to the exclusion of the general codal articles on interruption of prescription. *See Warren v. La. Med. Mut. Ins. Co.*, 07-0492 (La. 6/26/09), 21 So.3d 186 (on rehearing) (citing *Borel v. Young*, 07-0419 (La. 7/1/08), 989 So.2d 42 (on rehearing); *LeBreton v. Rabito*, 97-2221 (La. 7/8/98), 714 So.2d 1226). *See, e.g.,* La.Civ.Code art. 3462. In *Warren*, 21 So.3d 186, the supreme court confirmed that this dictate prohibits the application

of a general codal article such as La.Code Civ.P. art. 1153[3] to a medical malpractice case.

With regard to the applicable burden of proof, it is the party urging the exception of prescription who bears the burden of proving facts to support the exception unless the petition has prescribed on its face. *Duckworth v. La. Farm Bureau Mut. Ins. Co.*, 11-2835 (La. 11/2/12), 125 So.3d 1057. In this latter case, the burden shifts to the plaintiff. *Id.* "Although evidence may be introduced to support or controvert any objection pleaded, in the absence of evidence, an objection of prescription must be decided upon the facts alleged in the petition with all allegations accepted as true." *Id.* at 1072. *See also* La.Code Civ.P. art. 931. In the event that evidence is introduced at the hearing on the exception, an appellate court reviews the trial court's findings of fact pursuant to the manifest error-clearly wrong standard of review. *Rando v. Anco Insulations, Inc.*, 08-1163 (La. 5/22/09), 16 So.3d 1065.

*Starting Date of Prescription*

In their first several assignments of error, the plaintiffs challenge the trial court's determination that the prescriptive period applicable to defendants Manzer and Jones commenced on November 30 and December 4, 2010, respectively. The plaintiffs suggest that, instead, the prescriptive period commenced on December 15, 2010, the time when Mr. Wright suffered a massive stroke and sustained damages. Since the initial complaint was filed on December 15, 2011, the plaintiffs allege, the initial complaint was timely.

---

[3] Louisiana Code of Civil Procedure Article 1153 provides that: "When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading."

As noted, the amended complaint named defendants Manzer and Jones for the first time and was filed in July 2013. It alleged negligent acts/omissions of November 30 and December 4, 2010 against these defendants and did not allege discovery of that alleged negligence at any subsequent point. Thus, on its face, the complaint was prescribed as to these defendants well before July 2013. Too, the original complaint was filed on December 15, 2011, more than one year from the "alleged act, omission, or neglect" by these defendants as described in La.R.S. 9:5628(A). In light of this patent prescription, and in light of no allegations in the complaint that discovery of this conduct was subsequent to that date, it became the plaintiffs' burden of demonstrating that the filing was "within one year from the date of discovery of the alleged act, omission, or neglect" as further provided for in La.R.S. 9:5628(A).

Here, the plaintiffs asserted that, although the pertinent dates of alleged negligence occurred on November 30 and December 4, 2010, the date of discovery of the alleged act could not have been before the December 15, 2010 massive stroke from which the plaintiffs alleged that all damages flow. In their brief, the plaintiffs alleged that the various defendants' negligent conduct culminated in that injury. Thus, the plaintiffs argue, this alternative, commencement of prescription date from "discovery," required a finding that prescription began to run against defendants Manzer and Jones on December 15, 2010.

However, given the fact that the complaint against the defendants was prescribed on its face, we do not disturb the determination that the claim was otherwise prescribed. Instead, the plaintiffs have failed in their evidentiary burden of proving that the petition was filed "within one year from the date of discovery of the alleged act, omission, or neglect" as is permitted by La.R.S. 9:5628(A).

7

Critically, the plaintiffs filed no evidence in opposition to the exception of prescription that illuminated Mr. Wright's condition between the dates of purported negligence by these actors and the stroke of December 15, 2010. Neither did they present evidence regarding their understanding of Mr. Wright's condition at or regarding when they "discovered" any correlation between the acts/omissions of defendants Manzer and Jones and the later occurring stroke. Rather, the only exhibits introduced at the hearing were the jointly filed complaint letters.

Further, we are mindful that an exception of prescription must be decided upon the facts alleged in the petition with all allegations accepted as true in the event that evidence is not submitted. *See Duckworth*, 125 So.3d 1057. However, the present complaints do not support a finding in favor of the plaintiffs. Instead, neither the initial complaint nor the amended complaints allege facts regarding the discovery of any negligence that occurred prior to December 15, 2010. Rather, in addition to naming the various instances of allegedly negligent conduct, the plaintiffs alleged only generally that as a result of the substandard care provided, Mr. Wright "suffered a massive stroke and hemiplegia, resulting in severe impairment." We find that, under the bare facts and allegations contained in the record, the trial court's ruling is supported.

Similarly, we find no merit in the plaintiffs' contention that the underlying cause of action did not arise until December 15, 2010. Obviously, La.Civ.Code art. 3492 provides that prescription of a delictual action begins "to run from the day injury or damage is sustained." However, La.R.S. 9:5628(A) more specifically provides periods applicable to the filing of medical malpractice claims. As pertinent in this case, the statute provides a period of one year within the "*alleged*

8

*act, omission, or neglect*, or within one year from the date of "discovery of the alleged *act, omission, or neglect*[.]" *Id.* (Emphasis added.) The statute pointedly references the "alleged act" and the "discovery of the alleged act[.]" *Id.* With regard to the discovery rule, the supreme court has explained within the context of a medical malpractice case that "determination of when prescription commences under the discovery rule depends on at least two primary factors: (1) the date on which the plaintiff gained actual or constructive knowledge of 'facts indicating to a reasonable person that he or she is the victim of a tort,' . . . and (2) the date on which the 'tortious act actually produces damages.'" *Bailey v. Khoury*, 04-0620, p. 24 (La. 1/20/05), 891 So.2d 1268, 1284 (quoting *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351 (La.1992), and *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502). The supreme court noted that "[b]oth knowledge and damages must be present for prescription to commence[.]" *Bailey*, 891 So.2d at 1284.

Again, and although the plaintiffs reference the December 15, 2010 stroke as both the date on which they acquired knowledge of the purported malpractice and the date on which damages were produced, we find that the exception of prescription was appropriately entered. Simply, the complaint letters list a series of allegedly negligent events and a date on which a culminating event occurred. The record otherwise lacks evidence that would clarify the point of discovery, i.e., knowledge and damages, by the plaintiffs, reasonable or otherwise.

Accordingly, we find that the plaintiffs' assignments regarding the commencement of prescription lack merit.

*Joint and Solidary Obligors*

Finally, the plaintiffs contend that, although defendants Manzer and Jones were not added to the claim until July 2013, the initial filing of the complaint in December 2011, suspended prescription against all joint and solidary obligors pursuant to La.R.S. 40:1299.47(A)(2)(a), as set forth above. However, as observed by the trial court, this principle does not apply if a claim against a defendant had prescribed by the time of the original complaint. In so ruling, the trial court relied upon *Masters*, 666 So.2d 1333, a case in which the second circuit determined that the filing of a medical malpractice suit neither interrupted nor suspended a prescriptive period that had already run against a newly added defendant. Although the plaintiffs suggest that *Masters* is distinguishable, as the defendants in that case were added in excess of three years after the tortious conduct, we do not find that this distinction is meaningful as applicable in this case. Instead, the import of *Masters* is mirrored in subsequently-rendered supreme court jurisprudence indicating that application of such relation-back theories to an untimely filed petition/claim would circumvent the purposes of the specific legislative mandates of La.R.S. 9:5628 and La.R.S. 40:1299.47. *See, e.g.*, *Warren*, 21 So.3d 186; *Borel*, 989 So.2d 42; and *LeBreton*, 714 So.2d 1226.

Again, having found no error in the trial court's determination that the plaintiffs' claim against defendants Manzer and Jones was prescribed by the time of the initial December 15, 2011 claim, we find no merit in the plaintiffs' assignment of error regarding suspension of their claim by the initial filing against joint and solidary tortfeasors.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.  Costs of this proceeding are assigned to the plaintiffs-appellants, Don C. Wright and Patricia C. Wright.

**AFFIRMED.**